UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| VALENCIA P. BREAUX | CIVIL ACTION |
| VERSUS | NO. 13-712-RLB |
| CAROLYN W. COLVIN, ACTING COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION | CONSENT |

# RULING

Plaintiff, Valencia P. Breaux (Plaintiff), seeks judicial review of a final decision by the Commissioner of the Social Security Administration (Commissioner) pursuant to 42 U.S.C. § 405(g). (R. Doc. 1).[1] The Commissioner denied Plaintiff's application for supplemental security income "under Title XIX of the Social Security Act." (Tr. 141-46). For the reasons given below, the Court **ORDERS** that the decision of the Commissioner be **AFFIRMED** and Plaintiff's appeal be **DISMISSED with prejudice**.

## I. PROCEDURAL HISTORY

On January 13, 2011, Plaintiff protectively filed an application for supplemental security income benefits. (Tr. 141-46). Plaintiff alleged that she became disabled on December 14, 2010 due to back problems, facet joint deterioration, anxiety and depression. (Tr. 72, 415). The claim was initially denied and Plaintiff filed a timely request for a hearing that was held on June 19,

---

[1] References to documents filed in this case are designated by: (R. Doc. [docket number(s)] at [page number(s)]). References to the record of administrative proceedings filed in this case are designated by: (Tr. [page number(s)]).

2012. (Tr. 29-62). Plaintiff, represented by counsel, appeared and testified at the hearing. (Tr. 33-56). Thomas Mungall, a Vocational Expert (VE), also provided testimony. (Tr. 56-60). An unfavorable decision was rendered by the Commissioner, through the Administrative Law Judge (ALJ), on August 15, 2012. (Tr. 13-23). The ALJ found that Plaintiff had not been under a disability since January 13, 2011, the application date. (Tr. 13). Plaintiff's request for review was denied by the Appeals Council on October 21, 2013. (Tr. 1-6). The ALJ's decision rested as the final decision when the Appeals Council denied Plaintiff's request for review. *See* 20 C.F.R. § 404.981 ("The Appeals Council's decision, or the decision of the administrative law judge if the request for review is denied, is binding unless you . . . file an action in Federal district court . . . ."). The ALJ's final decision is now ripe for review under 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

This Court's review of the Commissioner's decision is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Substantial evidence has been defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. of N.Y. v. N.L.R.B.*, 305 U.S. 197, 229 (1938) (defining "substantial evidence" in the context of the National Labor Relations Act, 29 U.S.C. § 160(e))). The Fifth Circuit has further held that substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but no substantial evidence will be found only where there is a conspicuous absence of credible choices or no contrary medical evidence." *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983).

Conflicts in the evidence are for the Commissioner "and not the courts to resolve." *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The court may not reweigh the evidence, try the case de novo, or substitute its own judgment for that of the Commissioner even if it finds that the evidence preponderates against the Commissioner's decision. *See, e.g., Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994) ("This is so because substantial evidence is less than a preponderance but more than a scintilla."); *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988) ("we must carefully scrutinize the record to determine if, in fact, such evidence is present; at the same time, however, we may neither reweigh the evidence in the record nor substitute our judgment for the Secretary's"); *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988) (same).

If the Commissioner's decision is supported by substantial evidence, then it is conclusive and must be upheld. *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000). If the Commissioner fails to apply the correct legal standards, or fails to provide a reviewing court with a sufficient basis to determine that the correct legal principles were followed, it is grounds for reversal. *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987).

## III.    ALJ'S DETERMINATION

In determining disability, the Commissioner (through an ALJ) works through a five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520(a)(4). The burden rests upon the claimant throughout the first four steps of this five-step process to prove disability. If the claimant is successful in sustaining his or her burden at each of the first four steps, the burden shifts to the Commissioner at step five. *See Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991) (explaining the five-step process). First, the claimant must prove he is not currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). Second, the claimant must prove his or her impairment is "severe" in that it "significantly limits your physical or mental ability to do basic

work activities . . . ." 20 C.F.R. § 404.1520(c). At step three the ALJ must conclude the claimant is disabled if he proves that his or her impairments meet or are medically equivalent to one of the impairments contained in the Listing of Impairments. *See* 20 C.F.R. § 404.1520(d) (step three of sequential process); 20 C.F.R. pt. 404, subpt. P, app. 1 (Listing of Impairments). Fourth, the claimant bears the burden of proving he is incapable of meeting the physical and mental demands of his or her past relevant work. 20 C.F.R. § 404.1520(f).

If the claimant is successful at all four of the preceding steps then the burden shifts to the Commissioner to prove, considering the claimant's residual functional capacity, age, education and past work experience, that he or she is capable of performing other work. 20 C.F.R § 404.1520(g)(1). If the Commissioner proves other work exists which the claimant can perform, the claimant is given the chance to prove that he or she cannot, in fact, perform that work. *Muse*, 925 F.2d at 789.

Here, after reviewing the evidence contained in the administrative record, the ALJ made the following determinations:

1. Plaintiff had not engaged in substantial gainful activity since January 13, 2011, the protective filing date.

2. Plaintiff suffered from the following severe impairments: status post anterior cervical disc fusion, low back pain, obesity, depression, anxiety, and post-traumatic stress disorder (PTSD).

3. Plaintiff's impairments did not meet or medical equal the severity of any Listings, either alone or in combination.

4. Plaintiff had the residual functional capacity (RFC) to perform light work. However, she could: (1) not climb ladders, ropes or scaffolds; (2) not reach overhead; (3) only stoop, kneel, crouch or crawl on occasion; and (4) only perform simple and routine work that did not require public contact.

5. Plaintiff could not perform her past relevant work (PRW) as either a corrections officer or a security guard because the exertional demands of those occupations exceeded the RFC.

6. Plaintiff was a younger individual (age 18-49).

7. Plaintiff had a high school education and could communicate in English.

8. The transferability of job skills was immaterial to the ultimate determination of disability because the Medical Vocational Guidelines (GRIDS) supported a finding of not-disabled, regardless of the transferability of Plaintiff's job skills.

9. Given Plaintiff's age, education, work experience and RFC, she could perform the following jobs existing in the national economy: File Clerk I (DOT No. 206.387-034); General Office Clerk (DOT No. 209.562-101); and Housekeeper/Cleaner (DOT No. 323.687-104).

(Tr. 15-22).

## IV.  DISCUSSION

Plaintiff raises three assignments of error in support of her appeal.  First, Plaintiff suggests the ALJ "erred in failing to provide any reasons whatsoever for her rejection of the opinions of examining psychologist, Dr. Maxine Flint, whose opinions directly conflict with the ALJ's RFC assessment." (R. Doc. 14 at 4).  Plaintiff later suggests that Dr. Flint was actually a "treating source" and that the ALJ's failure to explain the weight given to Dr. Flint's opinion "renders her RFC assessment a nullity" and "remand is required." (R. Doc. 14 at 5-6).  Second, Plaintiff believes remand is necessary because the ALJ failed to conduct a "sustainability analysis" when presented with evidence that Plaintiff's "signs and/or symptoms 'wax and wane' precluding an ability to sustain work-related activities on a regular and continuing basis." (R. Doc. 14 at 6).  Finally, Plaintiff claims the ALJ committed reversible error by "failing to consider plaintiff's Chronic Fatigue Syndrome (CFS) in her RFC assessment and in her final disability determination." (R. Doc. 14 at 8).

5

A. **Medical Opinion Evidence**

Plaintiff suggests the ALJ erred in failing to explain the weight given to the opinion of her "treating source,"[2] Dr. Maxine Flint, who rated Plaintiff's Global Assessment of Functioning (GAF) at 41 on June 11, 2012. (R. Doc. 14 at 4, 6); (Tr. 967). A GAF score of 41 indicates either "serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." American Psychiatric Association: *Diagnostic and Statistical Manual of Mental Disorders* 32 (DSM–IV) (Michael B. First, M.D., et al. eds., 4th ed. 2000). Plaintiff therefore claims that Dr. Flint's opinion "directly conflicts" with the RFC. (R. Doc. 14 at 4). For that reason, the ALJ's failure to explain why the opinion was not given controlling weight renders the RFC "a nullity." (R. Doc. 14 at 6). This argument fails for several reasons.

First, Dr. Maxine Flint is not a treating source as she only examined Plaintiff once, on February 11, 2010, at the Commissioner's request. (Tr. 652-54). *See Clayborne v. Astrue*, 260 F. App'x 735, 737 (5th Cir. 2008) (doctor properly rejected as treating source where "isolated visits" did not amount to an "ongoing treatment relationship" with doctor); *Hernandez v. Heckler*, 704 F.2d 857, 860-61 (5th Cir. 1983) (doctor who only saw claimant twice in a 17-month period was not a treating physician); *Taylor v. Astrue*, 245 F. App'x 387, 391 (5th Cir. 2007) ("[N]othing about Taylor's relationship with Dr. Weisberg establishes the 'longitudinal' pattern of care described in [the regulations]; Taylor's two visits to Dr. Weisberg, four years apart, are the sort of "individual examinations" that are distinguished . . . from the continuous care provided by a treating physician."). Because Dr. Flint was not a treating source, the ALJ

---

[2] While Plaintiff initially refers to Dr. Flint as an "examining psychologist," she later claims that "Dr. Maxine Flint was a treating source." (R. Doc. 14 at 4, 6).

6

was not required to give great weight to her opinion, or assess her opinion using the factors outlined by the Fifth Circuit in *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000).

Second, the June 11, 2012 medical record finding Plaintiff had a GAF of 41 is not attributable to Dr. Flint, as Plaintiff suggests. There is only one piece of record evidence attributable to Dr. Flint — a February 11, 2010 Consultative Psychological Evaluation. (Tr. 652-54). In that report, Dr. Flint actually assesses Plaintiff's GAF at 60. (Tr. 654). The report from June 11, 2012 is an Initial Assessment from the Cognitive Development Center of Baton Rouge. (Tr. 963-69). While the physician's signature on the Initial Assessment is not legible, Plaintiff attributes this evidence to a "Dr. Sanders" in her brief to the Appeals Council. (Tr. 234). Either way, the GAF score was assessed during an "Initial Assessment." (Tr. 963-69). Therefore, this opinion cannot be considered as that of a treating source and the ALJ did not have to afford controlling weight to the opinion or perform the detailed analysis required by *Newton*.

Aside from her treating source argument, Plaintiff contends that her GAF score of 41 establishes mental limitations that are incompatible with the RFC. However, she suggests the ALJ "dismiss[ed]" the score "because it 'occurred only eight days prior to the June 19, 2012 hearing.'" (R. Doc. 15 at 5) (quoting (Tr. 20)). A review of the entire decision, however, makes clear that the ALJ found the date of the evaluation significant only because it was the first time Plaintiff had sought mental health treatment in almost a year (Tr. 20, 967, 972).[3] In other words, the ALJ properly relied on Plaintiff's failure to obtain regular treatment as discrediting her allegation that she suffered from disabling mental impairments. *Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990) (ALJ may rely on lack of treatment as an indication of non-disability).

---

[3] This evidence also contradicts Plaintiff's testimony that she was "receiv[ing] psychological counseling . . . [t]wo to three times a week" at the time of the hearing. (Tr. 45).

7

Beyond that, the physician assessing Plaintiff's GAF did not provide an explanation for the score, or indicate the objective findings, if any, upon which it was based. *Ray v. Barnhart*, 163 F. App'x 308, 313 (5th Cir. 2006) (psychologist's opinion was properly discredited where his report did "not include an explanation for the GAF rating" given to claimant). Moreover, the score was assessed during Plaintiff's initial visit with the Cognitive Development Center. The exam notes from that visit largely record Plaintiff's subjective complaints and recount of her personal history, as opposed to the physician's observations — further diminishing the significance of this evidence. Plaintiff's GAF of 41 is likewise contradicted by two higher GAF scores in the record — scores of 60 and 55 — which indicate moderate symptoms. (Tr. 654) (Dr. Flint found Plaintiff had a GAF of 60 on February 11, 2010); (Tr. 977) (Dr. Michelle Browne-Barnum found Plaintiff had a GAF of 55 on October 19, 2011); DSM-IV at 32 (A GAF between 60 and 51 indicates "Moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational or school functioning (e.g., few friends, conflicts with peers or co-workers).").

Finally, Plaintiff's GAF score it is not substantial evidence to contradict the RFC. For an impairment to be disabling under the Act, it must be expected to last for at least 12 months. With that in mind, a GAF score alone is not dispositive of a claimant's ability to work because it is not a longitudinal representation of the claimant's mental impairment. Rather, a GAF score is essentially a "snapshot" of the mental impairment — it only considers the claimant's functioning "at the time of the evaluation and the score can greatly fluctuate over time." *White v. Colvin*,

2013 WL 441335 at *9 (S.D. Tex. Aug. 12, 2013).[4] And so, Plaintiff's score simply represents her level of mental functioning on June 11, 2012.

Plaintiff points to no other evidence to suggest that substantial evidence does not support the ALJ's RFC assessment. And so, the Court finds Plaintiff's first assignment of error is without merit.

### B.     Ability to Sustain Work Activity

Plaintiff suggests that under *Watson v. Barnhart*, 288 F.3d 212 (5th Cir. 2002), the ALJ was required to consider her "ability to sustain work-related activities on a regular basis" because the evidence suggests that the symptoms of her anxiety, depression, headaches, CFS and neck impairment, "'wax and wane.'" (R. Doc. 14 at 6). Put another way, in addition to finding Plaintiff's impairments did not prevent her from obtaining employment, *Watson* required the ALJ to separately consider whether she would be able to maintain that employment. Plaintiff supports this contention by pointing to instances in which physicians have described her anxiety, depression, headaches and neck pain as "chronic and/or recurring." (R. Doc. 14 at 6-7) (citing (Tr. 367, 473, 511, 624, 627, 636, 652-54, 680-83, 689, 967)). She further suggests that her diagnoses of CFS, "by definition," clearly involves "'waxing and waning.'" (R. Doc. 14 at 7). In response, the Commissioner argues that even if Plaintiff's symptoms waxed and waned, "Plaintiff fails to establish that her symptoms, even at their worst, were sufficiently severe as to prevent her from holding a job for a significant period of time." (R. Doc. 16 at 8). The Court agrees.

Plaintiff insists that her symptoms wax and wane simply because she was diagnosed with chronic fatigue syndrome and either "chronic" or "recurrent" anxiety, depression, neck pain, and

---

[4] Recognizing these differences, the Commissioner has advised that the "GAF scale . . . is endorsed by the American Psychiatric Association" and it "does not have a direct correlation to the severity requirements" of the Social Security Act. 65 Fed. Reg. 50746, 50764-50765 (Aug. 21, 2000).

9

headaches. However, "[t]he mere presence of some impairment is not disabling per se. Plaintiff must show that [she] was so functionally impaired by [her diagnosed conditions] that [she] was precluded from engaging in any substantial gainful activity." *Hames v. Heckler*, 707 F.2d 162, 165 (5th Cir. 1983). To cast doubt on the RFC assessment, Plaintiff would have to show that her "waxing and waning" impairments produce disabling symptoms when active or recurring. She has failed to make this showing.

The majority of the records cited by Plaintiff are from various emergency room physicians who examined her on one occasion. Their descriptions of Plaintiff's impairments as either "chronic or recurrent" are attributable to her subjectively reported medical history, as opposed to objective medical findings. (Tr. 367) (during an August 11, 2010 emergency room visit, Plaintiff reported a history of "chronic" headaches); (Tr. 473) (during a March 2, 2011 emergency room visit, Plaintiff reported a "history of chronic neck pain" (Tr. 472) and was then diagnosed with chronic neck pain by a one-time examining ER physician); (Tr. 511) (during a July 2010 emergency room visit, Plaintiff reported a history of recurrent migraines (Tr. 509)); (Tr. 652-54) (on February 11, 2010, one-time examining psychologist, Dr. Flint, diagnosed Plaintiff with "mild, recurrent" depression); (Tr. 689) (Plaintiff presented to the emergency room on March 2, 2012 (Tr. 673-93) complaining of anxiety and increased stress, she was diagnosed with acute anxiety and acute neck pain); (Tr. 967) (Plaintiff was diagnosed with recurrent depression at her initial visit to the Cognitive Development Center after relaying her history of depressive symptoms). Put into context, the characterization of Plaintiff's impairments as chronic or recurrent is the result of Plaintiff's reported medical history as opposed to a longitudinal treatment relationship with the examining physicians. Therefore, this is insufficient

to demonstrate that her impairments wax and wane to a degree that would require the ALJ to perform a *Watson* analysis.

Otherwise, the medical records show that Plaintiff neither suffers from disabling symptoms or symptoms that "wax and wane." For example, Plaintiff frequently exhibited full or normal range of motion in her extremities, back or neck; full or normal strength; and intact sensory. (Tr. 361, 368, 374, 419, 449, 472, 480, 491, 628, 629, 716, 825) (full or normal range of motion); (Tr. 361, 368, 374, 420, 449, 629, 631, 636, 716, 825) (normal strength); (Tr. 361, 368, 373, 374, 420, 461, 480, 636, 825) (no numbness or sensory intact). On occasion, Plaintiff also denied any symptoms of headaches, back pain, depression or anxiety. (Tr. 373, 395, 624, 628, 631, 635) (denies headaches); (Tr. 367, 373) (denies back pain); (Tr. 623, 627, 630, 634) (denies feelings of depression and hopelessness). As the ALJ pointed out, the record also demonstrates that Plaintiff went relatively long periods of time without refilling her prescription medications, which indicates her impairments were not disabling. (Tr. 19, 973, 981); (Tr. 993) (on June 11, 2012 Plaintiff did not report that she took any medications).

The record does not support Plaintiff's allegations of "chronic" or even "recurrent" disabling symptoms. As such, Plaintiff has failed to show that substantial evidence does not support the RFC or that the ALJ should have determined whether her symptoms precluded her from sustaining employment.

**C.     Chronic Fatigue Syndrome**

Plaintiff finally argues that the ALJ "erred in failing to consider Plaintiff's Chronic Fatigue Syndrome (CFS) in her RFC assessment and her final disability determination." (R. Doc. 14 at 8). According to Plaintiff, she was diagnosed with CFS in April and June of 2011 (Tr. 624, 632), by a treating source, Dr. Trenton Hinds of the Teche Action Clinic. (R. Doc. 9-10). This

diagnosis "should have set off 'alarms' warranting consideration because of the close association between CFS and fibromyalgia and the fact that the Social Security Administration now considers this impairment serious enough to warrant an expansive discussion of it in a single Social Security Ruling." (R. Doc. 14 at 9). But the ALJ, according to Plaintiff, "did not even mention, let alone consider," Dr. Hind's medical opinion diagnosing Plaintiff with CFS. (R. Doc. 14 at 10).

Plaintiff is correct that the ALJ did not mention her diagnosis of CFS. However, the ALJ extensively discussed the treatment records in the administrative transcript, including those from Dr. Hinds and other examining physicians at the Teche Action Clinic. The ALJ even discussed the actual treatment records in which Dr. Hinds diagnosed Plaintiff with CFS, along with 9 other impairments. (Tr. 18, 624, 632). Therefore, there is no merit to Plaintiff's contention that the ALJ ignored Dr. Hinds' medical opinion.

Otherwise, Plaintiff argues that her diagnosis of CFS, alone, warrants remand for consideration by the ALJ. The fact that Plaintiff has been diagnosed with CFS is insufficient to warrant remand. Again, it is the actual limitation(s) resulting from an impairment and not the impairment itself that is relevant to establishing disability. Plaintiff harps on her diagnosis without ever mentioning any limitations resulting from her CFS that might conflict with the ALJ's determinations.

The SSA recognizes that CFS may be a medically determinable impairment. But unlike the Center for Disease Control, which permits a diagnosis of CFS based solely on a patient's subjective complaints, the SSA requires a diagnosis of CFS to additionally be accompanied by "medical evidence, consisting of medical signs, symptoms and laboratory findings" before a diagnosis of CFS will be considered a medically determinable impairment. SSR 99-2P, 1999 WL

271569, at *1 (April 30, 1999). The SSA advises that 'medical signs' must be "clinically documented over a period of at least 6 months" and may include "palpably swollen or tender lymph nodes on physical exam; nonexudative pharyngitis; persistent, reproducible muscle tenderness on repeated examination, including the presence of positive tender points; or any other medical signs consistent with medically acceptable clinical practice . . . ." SSR 99-2P, 1999 WL 271569, at *3.

Dr. Hinds is the only physician to diagnose Plaintiff with CFS and that diagnosis only appears in his treatment records on three occasions between April 14, 2011 to June 2, 2011 — a period of less than 2 months. (Tr. 624, 632, 636). Therefore, Plaintiff cannot show that her diagnosis was consistently accompanied by objective medical signs for a period of 6 months where the diagnosis itself was only made over a period of two months. Moreover, Dr. Hinds provides no explanation for his diagnosis, nor does he indicate the signs, symptoms or laboratory findings, if any, that supported his conclusion. (Tr. 624, 632). Dr. Hinds' treatment records likewise do not indicated that he performed any of the diagnostic tests cited in SSR 99-2P that should accompany a diagnosis of CFS. (Tr. 623-639). *See* SSR 99-2P, 1999 WL 271569, at *3-4. Instead, the only relevant notes throughout his treatment records are of Plaintiff's subjective reports of fatigue, which she attributed to "pain" in May of 2011. (Tr. 624, 628, 632). Otherwise, CFS is not mention in the record after June 2, 2011 (Tr. 624). Plaintiff also did not allege CFS as a severe or disabling impairment before the ALJ. (Tr. 72, 157, 415) (alleging disability based on sciatica, neck pain, herniated lumbar disc and facet joint deterioration, back problems, anxiety and depression). Therefore, the record indicates that the ALJ did not err in failing to discuss Plaintiff's CFS in her opinion as the medical evidence is insufficient to establish CFS as a medically determinable impairment.

## V. CONCLUSION

For the reasons discussed above, **IT IS ORDERED** that the decision of the Commissioner is **AFFIRMED** and that Plaintiff's appeal is **DENIED with prejudice**.

Signed in Baton Rouge, Louisiana, on March 4, 2015.

_____
**RICHARD L. BOURGEOIS, JR.
UNITED STATES MAGISTRATE JUDGE**